NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0311n.06

No. 25-5702

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 17, 2026
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff -Appellee,

v.

ANTHONY L. WARD,

    Defendant -Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: CLAY, GIBBONS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. After surveilling Anthony Ward for several months, law enforcement executed a warrant to search his home for evidence of drug trafficking. The warrant rested on information obtained from a confidential informant, an out-of-state warrant for Ward's arrest on drug charges, hand-to-hand transactions that officers observed at or near Ward's home, and drugs they recovered from Ward's vehicle. Ward moved to suppress the evidence seized from his home, arguing that the warrant affidavit failed to establish probable cause. The district court denied his motion. Because the search warrant was supported by probable cause, we affirm.

## BACKGROUND

Ward challenges the district court's denial of his motion to suppress evidence seized from a residence in Chattanooga, Tennessee. In evaluating whether probable cause supported the warrant to search a residence, "we look only to the four corners of the affidavit." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). So we begin by describing the facts, as detailed in the affidavit.

For several months, officers in the Hamilton County Sheriff's Office investigated Anthony Ward on suspicions of illegal drug possession and distribution. It appears that this investigation began when a confidential informant told the officers that Ward was "engaged in the illegal sales and possession of Heroin." Warrant, R. 17-1, PageID 51. But the affidavit does not detail the date of the tip, and it contains no information about the informant's reliability, relationship with law enforcement, or the basis of the informant's knowledge about Ward's alleged drug dealing.

During the two months that officers surveilled Ward, they observed two apparent "hand-to-hand transactions" at or near Ward's house. *Id.* The first transaction was between Ward and another man at a Speedway half a mile from Ward's home. After the transaction, Ward returned directly home. Officers confirmed that the residence Ward returned to was his home because it matched the address listed on his revoked Tennessee ID, issued less than six months before their surveillance. The second transaction was between Ward and another person at Ward's home.

While conducting their investigation, out-of-state authorities notified the sheriff's office that there were active warrants for Ward's arrest for conspiracy to distribute heroin. The next day, officers followed Ward as he drove from his house to another location. When Ward arrived at his destination, officers arrested him for driving on a revoked license and the out-of-state warrants. Officers then searched Ward's car and found ten hydrocodone pills wrapped in a napkin in the driver-side door handle. They also found a marijuana blunt in the vehicle's center console.

From these facts, the affiant officer attested that there was probable cause to believe Ward kept illegal narcotics at his home. He explained that he had been a law enforcement officer for almost a decade and had "specialized training in and experience with the world of controlled substances, their unlawful use, and the traffic therein." *Id.* at PageID 50. Drawing from his experience, he averred that "[s]treet sellers of drugs often carry only a small amount [of drugs] on

their persons" while "keeping a large supply nearby." *Id.* He therefore requested a warrant to search Ward's home.

Based on the warrant affidavit, a state judge concluded that there was probable cause to search Ward's home for evidence of drug trafficking and issued a search warrant. Officers executed the warrant the same day. During their search they discovered approximately 94.8 grams of suspected fentanyl and 7.1 grams of suspected marijuana, digital scales, a pouch filled with small baggies, a pill bottle with 27 suspected hydrocodone pills, and approximately $9,720 in cash.

Ward was charged with one count of possession with intent to distribute at least 40 grams of fentanyl. He moved to suppress the evidence obtained during the search of his home, arguing that the affidavit used to obtain the search warrant did not establish probable cause. In the alternative, he claimed that the good faith exception to the exclusionary rule did not apply since any reasonable officer would have known that the warrant failed to establish probable cause. Adopting the magistrate judge's recommendation, the district court rejected both arguments and denied Ward's motion.

Ward entered into a conditional plea agreement. He pleaded guilty to one count of intent to distribute a controlled substance, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), while also reserving the right to appeal the district court's denial of his motion to suppress. The district court sentenced him to 168 months in prison. Ward timely appealed.

## ANALYSIS

When reviewing a district court's ruling on a motion to suppress we review its factual findings for clear error and its legal conclusions de novo. *United States v. Simmons*, 129 F.4th 382, 386 (6th Cir. 2025).

The Fourth Amendment requires "probable cause" for "Warrants [to] issue." U.S. Const. amend. IV. Probable cause is "not a high bar." *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). It requires only "a fair probability" that law enforcement will find "contraband or evidence of a crime . . . in a particular place." *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (citation modified). In other words, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). When deciding whether that "fair probability" exists, we assess "the totality of the circumstances through the common-sense lens of ordinary people, not the technical lens of trained lawyers." *Sheckles*, 996 F.3d at 337.

Based on the totality of the information in the affidavit on which the warrant was based, this warrant was supported by probable cause. A confidential informant alerted the sheriff's office to Ward's alleged drug trafficking. Then an out-of-state warrant confirmed that there was reason to believe Ward was distributing heroin. The officers' own surveillance confirmed those reports. At a gas station, less than half a mile from Ward's house, officers watched what appeared to be a drug transaction, after which Ward returned home. *See Sanders*, 106 F.4th at 462–63; *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). A second apparent drug transaction followed, this one in front of Ward's home. *See Ellison*, 632 F.3d at 349. And when officers ultimately arrested Ward and found drugs in his car, he had just come from home. *See Sanders*, 106 F.4th at 462. Moreover, the affiant, an officer in the Hamilton County Sherriff's Office, had almost a decade of experience and was thus "versed in the field of law enforcement," *Illinois v. Gates*, 462 U.S. 213, 232 (1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)), when he implied that although Ward only carried a "small amount" of drugs in his car, he was likely "keeping a larger

supply nearby." Warrant, R. 17-1, PageID 50. Thus, the totality of the facts detailed in the warrant affidavit provided a "substantial basis" for the magistrate to find probable cause to search Ward's home for drugs. *See Sheckles*, 996 F.3d at 339.

Ward resists this conclusion. But his arguments are not persuasive considering the totality of the circumstances.

Ward takes issue with the fact that the hard-to-hand drug transactions that the officers observed were not confirmed via a "controlled buy," or "direct observations of a reliable confidential informant." Appellant Br. at 19–20. Absent "confirmation that drugs were actually involved," Ward contends there was insufficient evidence to connect drug trafficking to his home. *Id.* at 14.

We disagree. Law enforcement need not always conduct a controlled buy to establish probable cause. We judge an affidavit based on "what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). The affidavit here did not definitively state that the observed transactions were drug deals, but it did not need to. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019). It needed only to "allege facts that create[d] a reasonable probability" that the transactions were drug deals. *United States v. Tagg*, 886 F.3d 579, 589 (6th Cir. 2018). The officers, drawing on their "training and experience," *United States v. McMullen*, 103 F.4th 1225, 1230 (6th Cir. 2024), viewed those transactions in light of the investigation's broader context. In their judgment, the transactions exceeded the "degree of suspicion" required for probable cause. *Tagg*, 886 F.3d at 586. And our own "common-sense" reading of the affidavit leads to the same conclusion. *See Sheckles*, 996 F.3d at 337. Given all the other information in the affidavit, including the out-of-state warrant and the drugs found in Ward's car, it was reasonable for the officers to believe that

the hand-to-hand transactions they observed were drug deals. The absence of a controlled buy, then, was not fatal to the probable cause finding.

Ward next challenges the affidavit's reliance on a confidential informant. He is right that the confidential informant in this case lacked the indicia of reliability that our cases typically require. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009). When an affidavit contains information from a confidential informant, we consider "three factors in connection with the totality of circumstances inquiry": the veracity, reliability, and basis of knowledge of the informant's tip. *Id.* The affidavit here did not contain any of that information. Thus, we agree with the district court that, "[i]f the CI's tip was the only basis for the search warrant, the Court would have no issue concluding that the warrant was unsupported by probable cause." D. Ct. Op., R. 24, PageID 129. But it was not. As already detailed, the affidavit contained sufficient "relevant data point[s]"—a law enforcement report that Ward was trafficking drugs, two observed hand-to-hand transactions at and near his home, and drugs recovered from Ward's vehicle—that, evaluated in their totality, provided a "substantial basis" for the magistrate to find probable cause to search Ward's home. *Christian*, 925 F.3d at 311.

## CONCLUSION

For the foregoing reasons, we affirm.